## Case No. 10,369.

### The NOVELTY.

### The F. MERWIN.

[10 Ben. 349.] [1]

District Court, E. D. New York. March, 1879.

COLLISION IN NEW YORK BAY — STEAMER AND SCHOONER—CHANGE OF COURSE IN EXTREMIS —IMMATERIAL ALLEGATIONS.

1. A schooner and a steamboat came in collision in New York Bay in the day time. The wind was strong, about W. by S. The schooner was coming up the bay, heading up for the Narrows, and the steamboat was going down the bay to sea. The libel of the schooner alleged that while she was coming up the bay, heading about N., she discovered the steamboat about a quarter to half a mile off, she having been, till then, hidden from view by other vessels which were also coming up the bay; that the steamer, when seen, was a point or two on the schooner's starboard bow, heading about W. N. W., and backing her engines; that soon after the steamboat started ahead with a starboard wheel, on a course attempting to cross the schooner's bow, but so that a collision was inevitable; and that the schooner luffed to prevent the vessels from coming together head and head and was struck by the steamboat on her starboard side. The steamboat alleged that she, when going down the bay, and heading about S. by E., met several schooners coming up; that she was on the west side of the channel along by the west bank, and that while the schooner was on her port bow, apparently about to pass on the port side of the steamboat as a schooner ahead of her had done, the schooner without cause luffed across her bows and thus caused the collision. *Held*, that the turning points of the case were whether the schooner, at the time she luffed, had the steamboat on her port bow or on her starboard bow, and whether the luffing of the schooner contributed to produce the collision.

2. On the evidence, the schooner had the steamboat on her starboard bow.

3. The allegations of the schooner, as to the steamboat's heading to W. N. W. and backing, and going ahead again and coming into the schooner on a starboard wheel, were not proved, but were immaterial allegations inasmuch as it was not claimed that the schooner did anything wrong before she luffed.

4. On the evidence, it appeared that the course of the steamboat was on a line eastward of that of the schooner; and that her pilot, in endeavoring to get to the westward of the schooner, crossed her bows and undertook this manoeuvre when there was not time and distance for him to perform it.

5. On the evidence, the luffing of the schooner was a movement in extremis not contributing to produce the collision, and the steamboat was solely liable for the collision.

In admiralty.

R. H. Huntley, for the Merwin.

W. R. Darling, for the Novelty.

CHOATE, District Judge. These are cross libels, brought to recover damages caused by a collision between the steamboat Novelty and the schooner F. Merwin in the lower bay of New York, shortly before noon on the 28th of December, 1876. The Merwin was a

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

three-masted schooner of about 340 tons, and was bound from Georgetown, D. C., to New York, with a load of coal. Her length was about 170 feet over all. The Novelty was a side-wheel steamboat, and was bound from Clifton Landing, Staten Island, to St. Johns, Florida. The length of the steamer was 210 feet. She was going out light, having on board about 100 tons of coal. The place of the collision was between Craven Shoal and the west bank. The wind was about W. by S. a strong breeze. The day was remarkably clear and pleasant.

The case, as stated in the libel of the schooner, is that she was heading north up for the Narrows and going about nine knots an hour; that while in this position, she discovered the Novelty off from one to two points on her starboard bow and at a distance of from a quarter to half of a mile, heading about W. N. W. and backing her engines; that other vessels coming up the bay had been between the schooner and the steamboat, covering the steamboat so that she could not be seen from the schooner, and when the obstructions passed away the steamboat was discovered in the position above stated and backing her engines; that soon afterwards the schooner noticed that the steamboat had stopped backing her engines and was moving them forward and making some progress through the water and making such a course as would take her directly across the bows of the schooner, and that if both vessels continued their courses a collision was inevitable; that the steamboat did not change her course, and thereupon the schooner, when at a distance of about 200 yards from said steamboat, put her helm hard down and luffed up to a westerly course; that the steamboat sheered further to the westward and southward and following the curve made by the schooner, though at the northward of it, and at this time being under full headway, she ran into the schooner, striking her on the starboard side just forward of the main chains, breaking the rail and seven of her bulwark stanchions, etc.; that the collision was caused by the mismanagement of the steamboat in starting ahead and keeping her course directly across the bow of the schooner and so that she would have been run over by the schooner, had not the latter changed her course, and in keeping under full headway and without porting her helm as she should have done, but, on the contrary, sheering on to the course of the schooner, and so continuing until the collision occurred, and in not having a competent lookout properly stationed.

The case of the steamboat, as stated in her libel, is that she took her course outward, going at about seven miles per hour, keeping close in to Fort Wadsworth, and, after passing Fort Tompkins on Staten Island, hauled down to a course S. one-half W., hauling close in towards the west bank and following

the course of the steamer Dictator, which was about 600 yards ahead and bound on the same voyage; that ample room was thus left for vessels to pass up or down on the port side of the steamboat; that at this time the Merwin, having the wind on her port side and about five points abaft the beam, and having her lower sails and one topsail set and going with the speed of about 12 miles an hour, was approaching on the port bow of the Novelty, being then about 600 yards ahead and 200 yards to leeward of her, and steering about N. by E. or half E. as if she was intending to pass the Novelty on her port side, as two other schooners were then also doing, and, in order to give her more room, the Novelty, putting her own wheel hard to port, hauled still further in to the west shore, heading inside of the upper buoy on the west bank below Fort Tompkins; and giving the schooner thereby the amplest room to pass the steamer on her port side; that suddenly, when about 100 yards ahead of the steamer, and without any apparent reason, the schooner put her helm hard to starboard, swinging to a course across the bows of the steamer about N. N. W.; thereupon immediately the steamer stopped and backed with all her force, but notwithstanding this the schooner struck the steamer a violent glancing blow on the port bow, knocking her stem and bow out; that the collision was caused wholly by the fault of the schooner, in suddenly and without reason changing her course so as to cross the bows of the steamer and when it was too late by any act on the part of the steamer to prevent the collision.

The evidence shows that there were four schooners standing up the bay for the Narrows at and just before the collision. They were nearly in a line. The Eva Bell was the foremost; she was about a quarter of a mile ahead of the Merwin. Then followed the Merwin. Astern of the Merwin, about a quarter of a mile, was the Georgia, and from half to three-quarters of a mile astern of the Georgia was the Kirk. The Dictator and the Novelty met this line of schooners as they went down the bay. The general position of this line of schooners was along the west bank and they were steering about north. I think that the testimony leaves no doubt whatever, that the Merwin was steering very nearly north; that she shaped her course for a point just clear of the bluff on the Staten Island side of the Narrows, and that she was running very near the west bank. This is not only shown by the testimony of those on board of her, but also by the evidence of those on the Georgia and the Kirk immediately astern of her and running for the same point. These parties had opportunity as well as motive in noticing the course she was making. It was also her proper course and there was no reason why she should deviate from it. She was outsailing the other schooners, had passed the

Kirk and the Georgia, and was gaining on the Eva Bell. Her speed upon the proof was nine miles an hour. She had all her lower sails set.

Up to the time that the Merwin luffed, which is charged against her as a fault and which manoeuvre she admits and attempts to justify, it is clear that she was not at fault, and that the steamer was bound to keep out of her way. The pleadings and the proofs present but two questions: (1) What were the relative positions and courses of the schooner and the steamer when the schooner luffed? and (2) was the luffing of the schooner a fault which caused or contributed to the collision, or was it done when the collision had already become inevitable, and under circumstances justifying the movement?

It is the claim of the schooner that when she luffed, the steamer was approaching her upon her starboard bow, upon a course crossing the bows of the schooner, and so as to make a collision inevitable if both vessels kept on their respective courses, and that to avoid cutting the steamer down, as she must have done if she kept on her course, and to lighten the blow, she put her wheel hard down and came up in the wind; that this was the only movement she could make with any chance of safety to herself and the steamer; that if she had attempted to keep off, instead of luffing, she could not have kept off in time, but would inevitably have run over the steamer.

It is the claim of the steamer that when the schooner luffed there was not the slightest danger of a collision; that the vessels were approaching on courses very nearly parallel, the steamer being on the schooner's port bow and well to windward of the course of the schooner; that, to make all sure, the steamer ported, taking her still further away from the schooner's course; that then, suddenly and without reason, the schooner luffed across the steamer's bows when it was too late to do any thing to prevent the collision which this luffing and nothing else made inevitable. It is evident that it is a material and necessary part of the steamer's case that when the schooner luffed the steamer was not on her starboard bow.

(The court, having discussed at length the evidence of the witnesses from the several vessels on this point, then proceeded as follows:)

Upon the whole testimony, I think it is clearly made out that the vessels were in the relative positions testified to by those on the Merwin at the time the master of the Merwin ordered the wheel hard down; that they were brought into this position wholly by the fault of the pilot of the Novelty in attempting to go to windward of the Merwin when he was unable to execute the manoeuvre. It seems probable that he miscalculated the speed of the Merwin, and although he put his wheel hard-a-port, it was

too late for him to cross her bows in safety.

Great stress is laid by the counsel for the steamer on what is claimed to be the fact, that the steamer was not at any time heading north of west up by the mouth of the Narrows and backing, nor coming round upon the course of the Merwin on a starboard helm, nor at any time covered by the Eva Bell from the sight of those on board the Merwin:—and that the Eva Bell did not keep off to avoid the Novelty, all of which are alleged in the libel of the schooner and testified to by Capt. Pearce, as what appeared to him to be facts as to the movements and course of the Novelty. I think it is established by the testimony of the engineer of the Novelty and by the other testimony, that she did not reverse her engines till the four bells were rung just before the collision, and also by the preponderance of the evidence that she was not heading north of west after passing the Eva Bell and before the collision, and that she approached the Merwin on a port and not on a starboard wheel after passing the Eva Bell; and on these points, therefore, Capt. Pearce must be held to be mistaken. These circumstances are, however, not in themselves important, except as they may affect the credibility or accuracy of observation of Capt. Pearce. It is of no consequence how the Novelty got into the dangerous position and proximity in respect to the Merwin which she was in when Capt. Pearce gave the order to luff. The schooner having steadily kept on her course till that moment, it was the fault of the Novelty that she got there in any way by her own movements. And enough of the averments of the libel of the schooner are clearly proved to sustain her case and throw the responsibility of that position of the two vessels on the Novelty at that point of time. Whether Capt. Pearce's mistakes, noticed above, are owing to misrecollection of the incidents preceding that position of danger in which he found himself, or to carelessness of observation, is immaterial. Up to that time he had committed no fault, as is conceded. On the principal fact testified to by him of the position and general course of the steamer when he ordered his wheel hard down, he is fully sustained by other testimony of the strongest character, and these mistakes, if they are wholly such, cannot, in my opinion, be taken to impair his credibility or to call in question the reality of what he testifies was the state of facts when he gave this order to his wheelsman. Indeed, there cannot be the slightest doubt that it was a position of real danger that called forth the startling cry of Capt. Pearce, "What is that steamer doing?" etc., "Hard down your wheel!" The tone in which it was uttered startled the two men and the boy who were below and brought them instantly on deck, one of them almost naked and without waiting to put on his clothes. And yet, if the story of Hoffman, the pilot of the steamer, is true, there was not the slightest appearance of danger from the deck of the Merwin. The Novelty was passing her safely on the port side and keeping still further off. Hoffman's story does not in any way account for the alarm on the schooner, or for her luffing. His story is, on this ground, therefore, improbable in itself as well as unsustained by the testimony of witnesses.

In respect to the course of the Novelty from the time she passed Fort Tompkins till the moment the Merwin luffed, since we must reject as unworthy of credit the testimony of her pilot, and her lookout, if she had one, is not called, we have not sufficiently definite proof to determine whether the Eva Bell may not have at one time covered her from the sight of the Merwin; that she made a course considerably to the eastward of that of the Merwin is certain; that she was so far to the eastward that she was obliged to port in order to pass the Eva Bell, is, I think, also proved. Capt. Pearce may well have mistaken the change of course made by the Eva Bell to the eastward when about opposite the hospital on the west bank, for a movement of keeping off to pass the Novelty. It may be that he did not notice the Novelty till she passed the Eva Bell and then seeing her supposed she was uncovered by the Eva Bell, but this is a point of no importance.

The only remaining question is whether the luffing of the schooner contributed to bring about the collision. Some of the witnesses from the other vessels think that if she had kept her course she would have cleared the steamer. It was the judgment of her master, formed instantly, it is true, and without time for deliberation, that this was the only movement that afforded any chance of avoiding or easing off the blow that seemed inevitable; that if he kept his course the two vessels would come together head and head; if he ported and endeavored to keep off, with his vessel loaded as she was, and with the wind and her sails as they were, he could not keep her off quickly enough to clear the steamer, but would have cut her down and probably sunk both vessels. No doubt a sailing vessel which changes her course when meeting a steamer must justify her change of course, but where the change is made in a position of extreme peril, brought about by the action of the steamer herself, some weight is to be given to the judgment, formed on the instant, of those in command of the sailing vessel. Much depends, of course, on the evidence as to the extremity of the peril. It is a question of distances, relative courses and speed, and the probable effect of keeping on and of possible changes of course. Upon the whole, I think the schooner has made out a case on this point upon the testimony, and that the position of the vessels was such as justified her in luffing in order to prevent the great damage which the

movements of the steamer then apparently made inevitable; that her luffing did not cause nor contribute to bring about a collision, but prevented greater loss and damage than would otherwise have resulted from the fault of the steamer.

The libel of the Newark Transportation Co. against the Merwin dismissed with costs. Decree for libellants against the Novelty, with costs, and a reference to compute the damages.

[NOTE. The libelants in the case against the Merwin appealed from the clerk's taxation of costs. The court ordered the costs to be re-taxed. Case No, 4,893.]